**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANUPA RAO | : | |
| 249 Lewis Fisher Dr. | : | |
| Titusville, NJ 08560 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: |
| | : | |
| v. | : | |
| | : | |
| CLINICAL CARE ASSOCIATES | : | |
| OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA HEALTH SYSTEM | : | **JURY TRIAL DEMANDED** |
| 1500 Market St. | : | |
| 8th Fl., West Tower | : | |
| Philadelphia, PA 19102 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Anupa Rao (hereinafter referred to as "Plaintiff") against Clinical Care Associates of the University of Pennsylvania Health System (hereinafter referred to as "Defendant"). Plaintiff asserts violations of Title VII of the Civil Rights Act ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), the Americans with Disabilities Act, as Amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 et. seq.), and the Pennsylvania Human Relations Act (PHRA).[1] Plaintiff contends she was subjected to

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit for date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same

discriminatory and retaliatory mistreatment while employed with Defendant (as explained *infra*) and that she was unlawfully terminated from her employment.

## **JURISDICTION AND VENUE**

2.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3.     This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.     Plaintiff is proceeding herein under Title VII, ADA, and the ADEA and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

---

because of the date of issuance of her federal right-to-sue letter under Title VII, the ADA and the ADEA. Plaintiff's claims under the PHRA will mirror her Title VII, ADA, and ADEA claims asserted herein.

**PARTIES**

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult individual, with an address as set forth in the caption.

8.     Defendant a full-service primary care community health system.

9.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff began working for Defendant in or about February 2023, as a Patient Service Associate ("PSA") at its Yardley, Pennsylvania location.

12.     As a result of her strong work ethic and performance, Plaintiff was promoted to a Patient Access Lead ("PAL") in or about October 2024.

13.     Throughout her employment with Defendant, Plaintiff performed her job duties in a highly competent and expected manner, including patient-facing work, front-end and back-end office responsibilities, training employees, covering shortages, assisting providers, helping with schedules, de-escalating difficult patient situations, and supporting office operations.

14.     In or about November 2024, there was a shift in Defendant's management at Plaintiff's work location and Plaintiff began being supervised by Associate Practice Manager – Stephanie Dowling (Caucasian/American – hereinafter "Dowling").

3

15.     Plaintiff was also supervised by Administrator of Practice Operations – Rebecca "Becky" Miller (Caucasian/American – hereinafter "Miller").

16.     The Human Resources personnel during all relevant times herein was Senior Human Resources Business Partner, Rochelle Faulkner – (Black/African-American – hereinafter "Faulkner").

### A.  Plaintiff Experiences Racial/National Origin Discrimination

17.     Plaintiff's national origin is Indian and her race is Asian/Asian-Indian; however, Plaintiff was born in the United States

18.     Starting in or about April of 2024, Plaintiff began to observe racially hostile comments and conduct being directed toward her and others of her same race and/or those of a foreign national origin.

19.     For example, Plaintiff witnessed Defendant's staff (1) mocking Asian individuals with phrases such as "ching chong;" (2) commenting about Plaintiff's appearance based on where (geographically) they believed her to be born; (3) stating that that Indian people or Asian people "look funny;" (4) making derogatory comments about prayer or religion/culture; (5) using racially charged profanity; (6) negatively commenting about Indian accents; (7) making comments about Indian food smelling bad; and (8) making comments that implied Caucasian superiority or exclusion.

20.     While many staff members and management participated in the aforesaid discriminatory treatment, there were two staff members whose discriminatory behavior was more prominent than the rest. These two individuals will hereinafter be referred to as "MS" (Caucasian/American) and "KB" (Caucasian/American).

21.    MS and KB would consistently engage in conversation together, making comments such as: "I'm so Caucasian," "you wouldn't get it," and "it's a Caucasian thing."

22.    In addition to making discriminatory comments related to race and national origin toward Plaintiff, MS also exhibited discriminatory behavior towards patients/callers of different race/ethnicities/national origins, including refusing to assist patients or callers with accents, hanging up on them, or sending them to Plaintiff rather than handling them herself.

23.    Plaintiff regularly observed MS openly express irritation toward patients with accents and upon information and belief, patients and other employees perceived her as racist but complaints regarding the same were dismissed.

24.    Shortly after the aforesaid change in management at Plaintiff's work location (in or about November of 2024), Plaintiff began being subjected to even more hostility and animosity based on her race and national origin by Defendant's management through disparate treatment.

25.    The disparate treatment that Plaintiff endured included but was not limited to:

i.    Plaintiff was frequently required to work through lunches, cover shortages, stay late, and work additional hours while being discouraged from cancelling lunches or accurately claiming overtime. However, employees who fell outside of her protected classes appeared able to cancel lunches, leave as they wished, or engage in personal activities while on the clock without issue.

ii.    Plaintiff was required to cover Bensalem frequently, including weekly coverage at times, even though other employees, who were not members of the same protected classes as Plaintiff and who lived closer or had coverage obligations were not held to the same standard.

iii. Plaintiff's role was enforced differently than the prior PAL (Dowling) and she was expected to manage extensive front-end, back-end, patient-facing, scheduling, training, and operational responsibilities. Dowling was allowed to remain away from patient-facing duties with fewer responsibilities and was later promoted.

**B. Plaintiff Experiences Flareups of Her Disability in Response to the Aforesaid Discriminatory Conduct.**

26. Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to Complex Post Traumatic Stress Syndrome ("C-PTSD") and Anxiety.

27. As a result of her disabilities, Plaintiff is (at times) limited in her ability to perform some daily life activities, including but not limited to sleeping, engaging in social interaction, focusing, and other daily tasks.

28. Despite her disabilities, Plaintiff was able to perform the duties of her job well with Defendant with or without reasonable accommodations.

29. Due to the discriminatory and hostile work environment that she was being subjected to on a consistent basis, Plaintiff began to have flareups of her disability wherein she started to have panic attacks and experienced anxiety symptoms; however, Plaintiff continued to perform her job well and without issue.

30. In response to her reoccurring flare ups, Plaintiff sought medical care and was placed on medications due to the severity of the symptoms.

31. To make matters worse, Plaintiff learned that her medical information about her past C-PTSD and personal history was spread around the workplace without her consent (which was clearly done to humiliate and harm Plaintiff) and that management was speaking negatively about her disability.

**C. Plaintiff Reports Concerns of Discrimination and Requests Reasonable Accommodations.**

32. Over time, Plaintiff began verbally reporting repeated concerns involving racial harassment, discriminatory comments, and PTSD-related ridicule to Miller and Dowling.

33. However, when Plaintiff raised concerns about this conduct, Defendant's management minimized, defended, and/or failed to meaningfully address the behavior

34. Therefore, in or about June 2025, Plaintiff reported concerns of harassment, discrimination, racism/national origin discrimination, and workplace hostility involving MS to Defendant's HR department, including Faulkner.

35. Plaintiff explained that the hostile work environment that she was being subjected to was exacerbating her disabilities.

36. At or around this same time, Plaintiff began requesting reasonable accommodations for her disabilities, including a workable desk space in a non-patient-facing area (so she could focus better) and a discriminatory-free environment.

37. Instead of properly investigating and/or remedying Plaintiff's concerns and rather than accommodate her disabilities, Plaintiff was forced to continue working in a patient-facing area under stressful and hostile conditions and was given no meaningful accommodation or protection.

**D. Plaintiff Experiences Retaliation in Response to Her Complaints of Discrimination and Requests for Accommodations.**

38. Following her aforesaid complaints of race/national origin discrimination and requests for reasonable accommodations, Plaintiff was subjected to significant retaliation and increased discriminatory hostility/animosity.

39. For example, but not intending to be an exhaustive list of the retaliatory actions that were taken against Plaintiff in response to her protected activity:

7

i. In or about February of 2025, Plaintiff was suddenly locked out of the schedule after she had been making schedules without issue;

ii. Shortly after locking her out of the schedule, Miller and Dowling came to the front area where Plaintiff was working and publicly stated that scheduling was now with leadership, embarrassing and undermining Plaintiff in front of her colleagues;

iii. Dowling told employees not to contact Plaintiff after hours, even though coworkers had historically contacted each other for help without issue;

iv. The team was told by Defendant's management that Plaintiff was not management and should not be approached for issues, even though she was expected to perform lead duties and assist with office operations;

v. Plaintiff had typically placed her belongings in a specific work area as she was instructed to do by management; however, after expressing concerns of discrimination, she was told to remove her belongings from the area because the area was for "leadership;"

vi. Providers who relied on Plaintiff were told not to contact her for assistance;

vii. Job duties that Plaintiff performed well, including patient grievances and difficult patient situations, were removed from her or restricted;

viii. Despite removing the aforesaid duties from Plaintiff, Defendant's management and staff still sent difficult patients or situations to her when it benefited them;

ix.   Plaintiff was criticized for being late a few times despite frequently covering shifts, working early hours, evenings, and shortages, and even though others that she worked with did not receive the same critique for being tardy;

x.   Defendant continued to refuse to allow Plaintiff to cancel lunches or accurately claim overtime in the same way others appeared able to do;

xi.   Plaintiff was excluded from emails and communications needed to perform scheduling and lead-related duties;

xii.   Defendant's management stopped speaking to Plaintiff and would completely ignore her after she raised concerns of discrimination; and

xiii.   Plaintiff was consistently made to feel isolated and marginalized within her role at Defendant.

**E.   Plaintiff Continues to Report Discrimination and Retaliation to Defendant's Human Resources and Ethics/Compliance Department, but the Retaliation Does Not Cease.**

40.   On or about September 12, 2025, Plaintiff sent a written summary to Defendant's Compliance Department ("Compliance"), including details regarding racial comments, Caucasian-superiority comments, discriminatory treatment based on race and disability, retaliation, and workplace hostility.

41.   At or around the same time, Plaintiff also contacted EAP/health advocate resources for mental health support, as she was having severe exacerbation of C-PTSD due to the discriminatory/retaliatory hostile work environment.

42.   In or about late September and again in October of 2025, Plaintiff followed up with Compliance due to a lack of response; however, no proper investigation was done, and no remedial action was taken.

9

43.     In addition to her complaint to Compliance, Plaintiff also continued to express concerns of hostility, racial/national origin discrimination, and retaliation to Faulkner throughout September and October of 2025, in addition to continuing to seek a workable desk space (as a reasonable accommodation).

44.     In or about October of 2025, Plaintiff also requested from Defendant's HR recruiter a transfer before one year because the environment had become unmanageable; however, Plaintiff was told that she still had to work in her position for a year before transferring.

45.     Despite her repeated reports of discrimination and retaliation, Defendant did not properly investigate or remedy her concerns, other than finally giving her a space to work that was not patient facing (as an accommodation under the ADA).

46.     Instead, Plaintiff continued to be subjected to discrimination and retaliation, including:

    i. telling her that she could no longer participate in the interview process for new Patient Service Associates (despite having been doing so since being promoted to a PAL);

    ii. attempting to force her into a billing role that she did not have the experience or qualifications to perform, was a significant change from her patient-facing and lead duties, and offered no meaningful growth;[2]

    iii. providers were again told not to contact Plaintiff for assistance; thus, destroying the relationships that Plaintiff had developed with the providers;

---

[2] Plaintiff declined the position because she believed it was connected to the retaliation and an effort to move her away from her career path.

iv.  Plaintiff continued to have job duties taken away from her and/or restricted;

v.  on or about January 30, 2026, Plaintiff received a pretextual performance review that did not accurately reflect her actual work, contributions, responsibilities, and performance; and

vi.  when Plaintiff questioned her performance review, Defendant's management acknowledged that Plaintiff was doing great but stated that the documentation had to reflect that she was average or still had room to grow.

**F. Plaintiff Begins to be Subjected to More Aggressive and Threatening Discrimination by Several Co-Workers**

47.  By early 2026, Plaintiff began to be subjected to significantly increased aggressive behavior surrounding her race, national origin, and age by several of her co-workers, including PAS – "LS" ("Black/African-American), PAS – "TM" (Black/African-American), and Floater – "JH" (Black/African-American).

48.  For example, these co-workers made and/or participated in comments such as:

i.  calling Plaintiff and "Indian bitch;"

ii.  stating they are going to kill Plaintiff;

iii.  stating that Plaintiff worked too hard and "needed a beating;"

iv.  mocking Indian accents;

v.  making comments about cutting off Plaintiff's hair, which included but was not limited to:

1.  "Why is your hair so thick? I am going to cut it and take it"; and

2.  suggesting that Plaintiff's hair is too thick for her age.

vi.  making comments about Plaintiff being in menopause and/or other inappropriate comments about her age;

vii.   making comments suggesting that Plaintiff was "done with life;" and

viii.   making negative comments about Plaintiff's C-PTSD diagnosis and medication, including telling Plaintiff that she needs to go back on her medication.

49.   In addition to the foregoing, these colleagues also made sexually inappropriate remarks to Plaintiff, including but not limited to:

i.   asking Plaintiff about her sex life;

ii.   questioning Plaintiff about her use of vibrators; and

iii.   talking about Plaintiff's cleavage and asking what her bra size is.

50.   Between February of 2026 and March of 2026, Plaintiff filed several Safety Net reports (an internal reporting system used to report dangerous or concerning interactions within Defendant) due to the aforesaid escalating aggression, discrimination, and threatening comments.

51.   However, like Plaintiff's prior complaints, her Safety Net reports were not investigated and her concerns remained unresolved.

52.   In addition to her aforementioned Safety Net reports, Plaintiff also contacted Plaintiff's HR department between February and March of 2026 regarding the aforesaid concerns she had with LW, TS and JH, but still no corrective measures were taken by Defendant's HR department.

53.   Because of Defendant's failure to properly investigate or remedy Plaintiff's concerns regarding racial/nation origin discrimination, age discrimination, disability discrimination and sexual harassment, Plaintiff did her best to keep her distance from LW, TM, and JH.

12

54. However, despite knowing the concerns she had about the aforesaid individuals, Dowling instructed Plaintiff to interact with TM and/or JH regarding an incomplete work-related folder the morning of March 13, 2026.

55. Plaintiff completed the task quickly and professionally (completing the assignment around 9 AM), while trying to maintain distance from the aforesaid individuals and avoid any confrontation.

56. Later that day at around 4:00 PM, TM approached Plaintiff's desk aggressively, stood over Plaintiff with her arms out and appeared ready to physically confront her.

57. Plaintiff removed herself from the aforesaid interaction with TM as soon as she had the chance and immediately went to Dowling for assistance (while in tears over the interaction).

58. Dowling dismissed Plaintiff's concerns regarding her interaction with TM, and Plaintiff returned to her work area wherein JH began to speak loudly toward Plaintiff.

59. Despite trying to ignore JH, she continued. Therefore, Plaintiff contacted security through the walkie-talkie and updated her Safety Net report.

60. During the week of March 16, 2026, Plaintiff contacted Defendant's HR and management by email and provided additional documentation regarding the aforesaid incidents, including Safety Net reports and a PDF summarizing the prior harassment, discrimination, retaliation, PTSD-related ridicule, age-related comments, sexual comments, racial/national origin comments, and workplace violence concerns.

61. Following this report, Plaintiff was kept under close surveillance by Defendant's management in an effort to intimidate Plaintiff and told that she was being aggressive for reporting concerns of discrimination and/or retaliation and that racial slurs were said by many individuals in the workplace.

62.     On or about March 24, 2026, Plaintiff was notified that she was terminated from her employment with Defendant for alleged "unprofessional conduct."

63.     Plaintiff's termination is completely pretextual, as:

    i.   Plaintiff had been complaining about discrimination and unprofessional conduct by employees who were not of the same protected classes as her for months prior to her termination; however, her complaints were dismissed and many of those individuals were not terminated like Plaintiff.

    ii.  Plaintiff's concerns of discrimination and retaliation were never rectified or properly investigated;

    iii. Plaintiff was a good performer and had no history of progressive discipline prior to her termination;

    iv.  Plaintiff was terminated shortly after her last complaints of discrimination and retaliation; and

    v.   Plaintiff was terminated at a time when she was confiding in Defendant's management and HR department about her disability and the impact that the aforesaid hostile work environment was having on the same.

64.     Based on the foregoing, Plaintiff believes and avers that she was terminated for discriminatory and retaliatory reasons in violation of federal and state law.

**Count I**
**<u>Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")</u>**
**([1] Race/National Origin Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

65.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66.     Plaintiff was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, discriminatory/derogatory comments, and threatening behavior because of her race, national origin, and/or complaints of racial/national origin discrimination.

67.     Defendant's management and HR department never properly investigated or remedied Plaintiff's concerns of discrimination or retaliation and her work environment only grew more hostile.

68.     Shortly following her last complaints of racial/national origin discrimination and retaliation to various members of Defendant's management and HR Department, Plaintiff was terminated from her employment for completely pretextual reasons.

69.     Plaintiff believes and avers that her race and/or national origin was a motivating or determinative factor in Defendant's decision to terminate her employment.

70.     Plaintiff also believes and avers that she was terminated in retaliation for engaging in protected activity under Title VII.

71.     Plaintiff asserts that Defendant's actions (discussed *supra*) were carried out in violation of Title VII.

### Count II
### Violations of 42 U.S.C. Section 1981 ("Section 1981")
([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)

72.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73.     Plaintiff was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, discriminatory/derogatory comments, and threatening behavior because of her race and/or complaints of racial discrimination.

74. Defendant's management and HR department never properly investigated or remedied Plaintiff's concerns of discrimination or retaliation and her work environment only grew more hostile.

75. Shortly following her last complaints of racial discrimination and retaliation to various members of Defendant's management, HR Department, and Compliance, Plaintiff was terminated from her employment for completely pretextual reasons.

76. Plaintiff believes and avers that she was terminated because of her race and/or her complaints of racial discrimination/retaliation.

77. Plaintiff asserts that Defendant's actions (discussed *supra*) were carried out in violation of Section 1981.

**Count III**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; & [3] Hostile**
**Work Environment; [4] Failure to Accommodate)**

78. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79. Plaintiff was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, discriminatory/derogatory comments, and threatening behavior because of her actual/perceived/record of disabilities and/or protected activity under the ADA.

80. While Plaintiff complained of the aforesaid discriminatory treatment she was subjected to based on her disabilities to Defendant's management and HR department, her concerns were ignored and no remedial action was taken.

81. Shortly following her last complaints of discrimination and retaliation under the ADA, Plaintiff was terminated from her employment for completely pretextual reasons.

16

82. Plaintiff believes and avers that her disabilities were a motivating or determinative factor in Defendant's decision to terminate her employment.

83. Plaintiff further believes that she was terminated in retaliation for engaging in protected activity under the ADA, including requesting accommodations and complaining of discrimination and/or retaliation under the ADA.

84. Lastly, Plaintiff believes and avers that Defendant failed to accommodate her.

85. These actions as aforesaid constitute violations of the ADA, as amended.

### Count IV
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
**(Retaliation)**

86. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

87. Towards the end of Plaintiff's employment with Defendant, Plaintiff complained that she was being subjected to sexual offensive and inappropriate questions and comments from her co-workers, which were unwelcomed and made her feel very uncomfortable.

88. There is no doubt that Plaintiff's complaints about the aforesaid commentary and questions were complaints of sexual harassment.

89. Plaintiff was terminated in very close temporal proximity to her last complaints of sexual harassment for completely pretextual reasons.

90. Plaintiff believes and therefore avers that she was terminated in retaliation for complaining of sexual harassment.

91. Plaintiff asserts that Defendant's actions (discussed *supra*) were carried out in violation of Title VII.

**Count V**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**(Retaliation)**

92.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93.    Towards the end of Plaintiff's employment with Defendant, Plaintiff complained that she was being subjected to discriminatory comments related to her age.

94.    Plaintiff was terminated in very close temporal proximity to her last complaints of age discrimination.

95.    Plaintiff believes and therefore avers that she was terminated in retaliation for complaining of age discrimination.

96.    Plaintiff asserts that Defendant's actions (discussed *supra*) were carried out in violation of the ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant and other employers from engaging in such misconduct in the future;

18

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: August 14, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Anupa Rao | : | CIVIL ACTION |
| v. | : | |
| Clinical Care Associates of the University of Pennsylvania Health System | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                  (  )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits.                         (  )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.                                                                  (  )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court.  (See reverse side of this form for a detailed explanation of special
      management cases.)                                                                     (  )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 8/14/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):*_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RAO, ANUPA

**(b)** County of Residence of First Listed Plaintiff    Mercer
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

CLINICAL CARE ASSOCIATES OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); ADEA (29USC621); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADA, ADEA, Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   8/14/2026    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____